JUDGE OETKEN

13 CIV 8997

Anthony J. Dreyer
Lauren E. Aguiar
Jamie Stockton
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000

*Attorneys for Plaintiff*
*Fresh Del Monte Produce Inc.*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FRESH DEL MONTE PRODUCE INC.,**   :

           **Plaintiff,**   :   13 Civ. _____ (____)

      - against -   :

**DEL MONTE CORPORATION,**   :   **COMPLAINT**

        **Defendant.**   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X   **JURY TRIAL DEMANDED**

       Plaintiff Fresh Del Monte Produce Inc. ("Fresh Del Monte" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant Del Monte Corporation ("DMC" or "Defendant"), alleges by its counsel upon personal knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.      This is an action for breach of contract to enforce Plaintiff's exclusive rights over the valuable and world-famous DEL MONTE trademark. The DEL MONTE trademark originated in 1892, and has become a household name throughout the world, associated with products of the highest quality, freshness, and reliability.

2.      Fresh Del Monte owns perpetual, exclusive, royalty-free rights to use the DEL MONTE name and trademarks on a broad array of goods by virtue of several license agreements with DMC, who has registered the DEL MONTE trademark in most parts of the world.

3.      Pursuant to a license agreement dated December 5, 1989 ("License Agreement"), plaintiff Fresh Del Monte has the exclusive, perpetual, royalty-free right to use the DEL MONTE name and related DEL MONTE trademarks (collectively the "DEL MONTE Marks") throughout the world in connection with the production, manufacture, sale, and distribution of "fresh fruit, fresh vegetables and fresh produce"; a list of certain refrigerated and frozen fruit products; and other, specified non-fresh products. The License Agreement also permits Fresh Del Monte to supplement the list of fruit to be deemed "Non-Utilized Fruit" under the License Agreement that it may sell under the DEL MONTE Marks as part of a frozen or refrigerated fruit product.

4.      Under the License Agreement, DMC retained for itself the right to use the DEL MONTE Marks in the United States and other countries on "products which have been heat treated or sterilized for the purpose of rendering such products shelf-stable."

5.      Shortly after entering into the License Agreement, DMC licensed away the vast majority of the rights it retained in the DEL MONTE Marks pursuant to license agreements subject and subordinate to the License Agreement, retaining only the ownership

2

of the DEL MONTE Marks and the right to exploit those marks in the United States and South America.

6.     DMC is now taking two positions that directly contradict and violate Fresh Del Monte's exclusive rights under the License Agreement:  (i) that Fresh Del Monte cannot use the DEL MONTE Marks on frozen or refrigerated fruit products containing avocado, pomegranate, coconut, and/or kiwi pursuant to the License Agreement; and (ii) that Fresh Del Monte does not have the exclusive right under the License Agreement to use the DEL MONTE Marks on refrigerated or frozen products containing certain fruit varieties.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction under 28 U.S.C. § 1332, as this dispute is between a party that is a citizen or subject of a foreign country and a party incorporated and having a principal place of business in another state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.   The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this Court because the License Agreement specifically vests exclusive jurisdiction for all disputes arising out of such Agreement in the Southern District of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### The Parties

9.     Plaintiff Fresh Del Monte is the holding company for the Del Monte Fresh Produce group of companies.  Fresh Del Monte is a corporation organized under the laws of the Cayman Islands.  Fresh Del Monte has its principal executive offices at 190 Elgin Avenue, George Town, Grand Cayman, Cayman Islands, and has U.S. executive offices at c/o Del Monte Fresh Produce Company, 241 Sevilla Avenue, Coral Gables, Florida 33134.

3

10.     Fresh Del Monte is one of the world's leading vertically-integrated producers, marketers, and distributors of high-quality fresh and fresh-cut fruit and vegetables in the United States and the rest of the world, as well as a leading producer and distributor of fresh and prepared fruit, vegetables, juices, beverages, snacks, and desserts in Europe, the Middle East, Africa, and the former Soviet Union countries.

11.     Fresh Del Monte has an exclusive and perpetual royalty-free license to use the DEL MONTE Marks in the United States and other countries worldwide in connection with, among other things, (i) fresh fruit, fresh vegetables, and other fresh and fresh-cut produce products; and (ii) refrigerated and frozen melon, berry, papaya, pineapple, and banana products, among other fruit varieties, regardless of whether such products contain fresh or preserved fruit.  Pursuant to other agreements not at issue here, Fresh Del Monte also has an exclusive and perpetual royalty-free license to use the DEL MONTE Marks in Europe, the Middle East, Africa, and the former Soviet Union countries on all food products (including beverages), fresh or otherwise.  Fresh Del Monte also owns the DEL MONTE Marks outright in South Africa.

12.     Defendant DMC is a corporation organized under the laws of Delaware, and has principal executive offices at One Maritime Plaza, San Francisco, California 94111.  Under the DEL MONTE Marks, DMC produces and distributes processed fruit and vegetable products in the United States.  It has licensed to other companies (including Fresh Del Monte) the right to use the DEL MONTE Marks in connection with processed foods sold outside of the United States (and certain countries in South America).

## The License Agreement

13.     Prior to August 1989, DMC was a wholly-owned subsidiary of RJR Nabisco, Inc., and had two major divisions: one operation was responsible for canned fruits and vegetables, fruit juices, and dried fruits; the other sold primarily fresh fruits and other produce.  In late 1989, the Del Monte business division that sold primarily fresh fruit and other produce was sold to Polly Peck International, and ultimately became the Plaintiff Fresh Del Monte.

14.     In connection with the sale of this business division, DMC retained ownership of the licensed DEL MONTE Marks, but it granted to Fresh Del Monte's predecessor in interest, through the License Agreement, the perpetual, exclusive and royalty-free right and license to use the DEL MONTE Marks on or in connection with the production, manufacture, sale, and distribution of "fresh fruit, fresh vegetables and fresh produce."

15.     DMC also expressly granted Fresh Del Monte the right to use the DEL MONTE Marks on an exclusive basis in connection with other products, including, but not limited to, all "refrigerated pineapple products," and all refrigerated and frozen "Non-Utilized Fruit."  Non-Utilized Fruit is defined to include "melons, berries, papayas and bananas" and, "at the written request of the Licensee," "other fruit" that may be added to the definition in accordance with paragraph (w) of Exhibit B to the License Agreement.

16.     Paragraph (w) of Exhibit B expressly authorizes Fresh Del Monte to add "other fruit" to the list of fruit to be deemed "Non-Utilized Fruit" under the License Agreement by submitting a written request to DMC.  DMC is required to give its consent to such a request unless DMC "(1) is marketing such fruit as a canned or frozen product or (2) has a definitive plan contemplating the marketing of such fruit as a canned or frozen product

5

within the 12-month period following the date of such request and has incurred costs of at least U.S. $500,000 in connection with the marketing of such fruit in the 12-month period immediately preceding such request . . . ."

17.     Paragraph (w) further provides that "such consent shall be deemed to have been given if [DMC] fails to reply to such request for its consent within ten business days after its receipt thereof[.]"

18.     The License Agreement is governed by New York law and provides that "[e]xclusive jurisdiction for disputes arising out of this Agreement shall be vested in the United States District Court for the Southern District of New York."

### Previous Litigation Involving the License Agreement

19.     The present dispute is, unfortunately, just the latest in a series of disagreements between Fresh Del Monte and DMC regarding the proper interpretation of the License Agreement.  Twice before, Fresh Del Monte has been forced to vindicate its rights under the License Agreement through legal proceedings before this Court.

20.     For example, in 1998, DMC challenged Fresh Del Monte's right to sell refrigerated cut fruit that was not preserved or processed, leading to an action in this Court. Del Monte Corporation v. Del Monte Fresh Produce, 98 Civ. 4060 (JSR).  Following a bench trial, the Court found for Fresh Del Monte, concluding that DMC's attempt to deny rights in the cut refrigerated fruit area to Fresh Del Monte "must ultimately be rejected . . . because it is inconsistent with both the meaning of the contract and the overall intent of the parties."

21.     In 2008, another dispute arose between the parties, this time over a different provision of the License Agreement.  DMC had introduced a series of refrigerated fruit lines, including "Orchard Select," "SunFresh," Fruit Naturals," "Superfruit," and "Fruit Bowls" (collectively, the "DMC Cut-Fruit Products") containing refrigerated pineapple,

berry, and/or papaya—products that plainly fell within Fresh Del Monte's exclusive rights under the License Agreement.

22.     Fresh Del Monte was left with no alternative but to commence litigation against DMC in this Court for breach of contract.  <u>Fresh Del Monte Produce Inc. v. Del Monte Foods Co. and Del Monte Corp.</u>, 08 Civ. 8718 (SHS).  After a two-week trial in the spring of 2012, a jury found that DMC's sale of the Cut-Fruit Products violated Fresh Del Monte's exclusive rights under the License Agreement.  Although not directly relevant to the instant lawsuit, the jury also found that certain marketing of the Cut-Fruit Products constituted false advertising in violation of the Lanham Act.

23.     In the post-verdict phase of that litigation, on April 29, 2013, Judge Sidney H. Stein issued a permanent injunction barring DMC from "using the DEL MONTE trademark . . . on <u>any product</u> containing pineapple, melon, berry, papaya and/or banana (the 'Five Fruits') that is intended to be refrigerated or chilled at the point of sale (the 'Breaching Products')[.]"  (Emphasis added.)

## DMC's Breach of Fresh Del Monte's Right to Supplement the List of Non-Utilized Fruit

24.     On January 31, 2013, in accordance with paragraph (w) of Exhibit B of the License Agreement, Fresh Del Monte provided written notice to DMC that Fresh Del Monte was seeking to add avocado to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

25.     DMC responded by letter dated February 7, 2013, purporting to deny Fresh Del Monte's request.  However, DMC did not cite a proper basis under the License Agreement for denying this request.

26.     On March 29, 2013, in accordance with paragraph (w) of Exhibit B of the License Agreement, Fresh Del Monte provided written notice to DMC that Fresh Del

Monte was seeking to add pomegranate and coconut to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

27.     DMC responded by letter on April 5, 2013, purporting to deny Fresh Del Monte's request with respect to both pomegranate and coconut. However, DMC did not cite a proper basis under the License Agreement for denying this request.

28.     After the ten business day response period had expired under paragraph (w) of Exhibit B, DMC improperly attempted to raise new grounds for declining this request to add pomegranate and coconut to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement, which again failed to constitute a proper basis under the License Agreement for denying the request. Specifically, in a letter dated April 26, 2013, DMC attempted to rely upon the marketing of certain canned coconut products as a basis to deny Fresh Del Monte's request; however, these canned coconut products were being marketed by an independent third party licensee of DMC, not DMC itself. Accordingly, this was not a proper basis under paragraph (w) of Exhibit B to deny Fresh Del Monte's request to add coconut to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

29.     On October 8, 2013, in accordance with paragraph (w) of Exhibit B, Fresh Del Monte provided written notice to DMC that it was seeking to add kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

30.     DMC responded by letter dated October 16, 2013, purporting to deny Fresh Del Monte's request. However, DMC did not cite a proper basis for denying the request.

8

31.     DMC stated in its October 16 letter that it was declining Fresh Del Monte's request "based on the fact that Del Monte Corporation is currently marketing kiwi products through licensees both as canned and frozen products." However, these kiwi products were being marketed by an independent third party licensee of DMC, not DMC itself. Again, DMC therefore did not identify a proper basis under paragraph (w) to deny Fresh Del Monte's request to add kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

32.     Because Fresh Del Monte properly added avocado, pomegranate, coconut, and kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement, neither DMC, nor its licensees, are authorized to market any refrigerated or frozen products containing any of these four fruits.

### DMC's Breach of Fresh Del Monte's Exclusive Right to Sell Frozen Fruit Products

33.     In addition to its baseless and erroneous objection to Fresh Del Monte's addition of avocado, pomegranate, coconut, and kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement, DMC has improperly asserted that it has the exclusive right to use the DEL MONTE Marks on certain frozen fruit products that actually are within Fresh Del Monte's exclusive rights under the License Agreement.

34.     On November 5, 2013, DMC sent a letter to Fresh Del Monte claiming that Fresh Del Monte does not have the right under the License Agreement to market certain frozen products containing Non-Utilized Fruit under the DEL MONTE Marks, and that such rights were supposedly retained by DMC.

35.     Upon information and belief, DMC, and/or its licensees with DMC's consent, are currently using the DEL MONTE Marks on frozen products containing Non-Utilized Fruit, including melon, berry, papaya, and/or banana.

9

36.     Upon information and belief, DMC's licensees are currently using the DEL MONTE Marks on frozen or refrigerated products containing Non-Utilized Fruit, including coconut, pomegranate, and/or kiwi.

37.     This plainly violates Fresh Del Monte's exclusive rights under the License Agreement.

### Harm to Plaintiff

38.     DMC's conduct has caused, and will continue to cause, Fresh Del Monte to suffer irreparable harm for which there is no adequate remedy at law.  Specifically, DMC's conduct is designed to permanently deprive Fresh Del Monte of its valuable right to market and sell refrigerated and frozen products containing Non-Utilized Fruit, including but not limited to avocado, pomegranate, coconut, and kiwi.  Moreover, the marketing of refrigerated or frozen fruit products containing Non-Utilized Fruit by DMC, and/or DMC's licensees, causes irreparable harm because Fresh Del Monte does not have control over the use of the DEL MONTE Marks with respect to products within its exclusive rights.

39.     DMC's conduct also has caused, and will continue to cause, Fresh Del Monte to incur monetary damages in the form of lost profits for so long as DMC uses, authorizes third parties to use, or seeks to prevent Fresh Del Monte from using the DEL MONTE Marks on refrigerated or frozen products containing avocado, pomegranate, coconut, kiwi, and/or other Non-Utilized Fruit varieties, products over which Fresh Del Monte has the exclusive rights to use the DEL MONTE Marks.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

40.     Plaintiff hereby repeats and re-alleges the allegations set forth in the preceding paragraphs of this Complaint.  The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes the Court to issue a declaratory judgment.

41.     There is an actual controversy between Fresh Del Monte and DMC, that is ripe for adjudication by the Court, with respect to Fresh Del Monte's rights under the License Agreement.

42.     Based on the facts alleged, Fresh Del Monte is entitled to a declaration that (i) it has the right to add avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement; (ii) it properly added avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement; (iii) DMC lacked any valid basis to deny Fresh Del Monte's request to add avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement; and (iv) the definition of Non-Utilized Fruit under the License Agreement shall include avocado, pomegranate, coconut, and kiwi, in addition to melon, berry, papaya, and banana.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

43.     Plaintiff hereby repeats and re-alleges the allegations set forth in the preceding paragraphs of this Complaint.

44.     The License Agreement is a valid and binding contract.

45.     Fresh Del Monte has performed all obligations required of it under the License Agreement.

11

46.     Paragraph (w) of Exhibit B to the License Agreement provides: "[A]t the written request of [Fresh Del Monte] . . . [DMC] shall give its consent to permit other fruit to be deemed 'Non-Utilized Fruit' unless, at the time such request is made, [DMC] (1) is marketing such fruit as a canned or frozen product or (2) has a definitive plan contemplating the marketing of such fruit as a canned or frozen product . . . ."

47.     Paragraph (w) further provides that "such consent shall be deemed to have been given if [DMC] fails to reply to such request for its consent within ten business days after its receipt thereof[.]"

48.     On January 31, 2013, in accordance with paragraph (w) of Exhibit B of the License Agreement, Fresh Del Monte provided written notice to DMC that Fresh Del Monte was seeking to add avocado to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

49.     DMC responded by letter dated February 7, 2013, purporting to deny Fresh Del Monte's request.  However, DMC did not cite a proper basis under the License Agreement for denying this request.

50.     On March 29, 2013, in accordance with paragraph (w) of Exhibit B, Fresh Del Monte provided proper written notice to DMC that Fresh Del Monte was seeking to add pomegranate and coconut to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

51.     On April 5, 2013, DMC responded by letter, purporting to deny Fresh Del Monte's request with respect to both pomegranate and coconut.  However, DMC did not provide a proper basis under the License Agreement for denying this request.

52.    Moreover, after the ten business day period under paragraph (w) of Exhibit B expired, DMC attempted to raise new grounds for declining this request, which were untimely and independently inadequate.

53.    On October 8, 2013, in accordance with paragraph (w) of Exhibit B, Fresh Del Monte provided proper written notice to DMC that Fresh Del Monte was seeking to add kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.

54.    On October 16, 2013, DMC responded by letter, purporting to deny Fresh Del Monte's request with respect to kiwi.  However, DMC did not cite a proper basis under the License Agreement for denying the request.

55.    Because DMC has repeatedly failed to cite a proper basis under the License Agreement for denying Fresh Del Monte's requests to add certain fruits to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement, Fresh Del Monte is deemed to have the required consent to add avocado, pomegranate, coconut, and kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement.  Accordingly, DMC's refusal to honor the requests of Fresh Del Monte constitutes a breach of the License Agreement.

56.    As a direct result of this breach, Fresh Del Monte has suffered damages in the form of lost profits due to DMC authorizing third parties to use, or seeking to prevent Fresh Del Monte from using, the DEL MONTE Marks on refrigerated or frozen products containing avocado, pomegranate, coconut, and kiwi.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract)**

57.    Plaintiff hereby repeats and re-alleges the allegations set forth in the preceding paragraphs of this Complaint.

13

58.     The License Agreement is a valid and binding contract.

59.     Fresh Del Monte has performed all obligations required of it under the License Agreement.

60.     Fresh Del Monte has exclusive rights under the License Agreement to use the DEL MONTE Marks on or in connection with certain refrigerated and frozen fruit products containing Non-Utilized fruit, including melon, berry, papaya, banana, avocado, pomegranate, coconut, and/or kiwi.

61.     On November 5, 2013, DMC sent a letter to Fresh Del Monte claiming that Fresh Del Monte does not have the right to market certain frozen products containing Non-Utilized Fruit under the DEL MONTE Marks, and that such rights were retained by DMC.

62.     Upon information and belief, DMC, and/or its licensees with DMC's consent, are currently using the DEL MONTE Marks on frozen products containing Non-Utilized Fruit, including melon, berry, papaya, and/or banana.

63.     Upon information and belief, DMC's licensees, with DMC's continued consent after the date upon which Fresh Del Monte properly added avocado, coconut, pomegranate, and kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement, are currently using the DEL MONTE Marks on refrigerated or frozen products containing Non-Utilized Fruit, including avocado, pomegranate, coconut, and/or kiwi.

64.     This plainly violates Fresh Del Monte's exclusive rights under the License Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Fresh Del Monte respectfully requests that the Court:

14

A.   Enter a declaration that:

    (1)   Fresh Del Monte has the right to add avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement;

    (2)   Fresh Del Monte properly added avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement;

    (3)   DMC lacked any valid basis to deny Fresh Del Monte's requests to add avocado, pomegranate, coconut, and kiwi to the definition of Non-Utilized Fruit under the License Agreement; and

    (4)   the definition of Non-Utilized Fruit under the License Agreement shall include avocado, pomegranate, coconut, and kiwi.

B.   Declare that DMC has breached the License Agreement by marketing, or authorizing its licensees to market, certain frozen fruit products containing Non-Utilized Fruit, including melon, berry, papaya, and/or banana;

C.   Declare that DMC has breached the License Agreement by authorizing its licensees to market certain frozen or refrigerated fruit products containing Non-Utilized Fruit, including avocado, pomegranate, coconut, and/or kiwi, after the date upon which Fresh Del Monte properly added avocado, pomegranate, coconut, and kiwi to the list of fruit to be deemed Non-Utilized Fruit under the License Agreement;

D.   Permanently enjoin DMC, its agents, servants, directors, principals, officers, employees, successors, assigns, and all those acting under its control or the control of its subsidiaries, affiliates or divisions and/or on its behalf and/or in concert, from marketing,

distributing, selling, or licensing any refrigerated products containing avocado, pomegranate, coconut, or kiwi;

    E.  Permanently enjoin DMC, its agents, servants, directors, principals, officers, employees, successors, assigns, and all those acting under its control or the control of its subsidiaries, affiliates or divisions and/or on its behalf and/or in concert, from marketing, distributing, selling, or licensing any frozen products containing melons, berries, papayas, bananas, avocado, pomegranate, coconut, or kiwi;

    F.  Award Fresh Del Monte money damages in an amount to be determined;

    G.  Award Fresh Del Monte all reasonable attorneys' fees and costs; and

    H.  Grant Fresh Del Monte such other and further relief as the Court deems just and proper.

## JURY DEMAND

    Plaintiff hereby demands a trial by jury on all claims so triable.

Date: December 19, 2013

             Respectfully submitted,

             Anthony J. Dreyer
             Anthony.Dreyer@skadden.com
             Lauren E. Aguiar
             Lauren.Aguiar@skadden.com
             Jamie Stockton
             Jamie.Stockton@skadden.com
             Xiyin Tang
             Xiyin.Tang@skadden.com
             SKADDEN, ARPS, SLATE,
              MEAGHER & FLOM LLP
             Four Times Square
             New York, New York 10036-6522
             Telephone: (212) 735-3000

             Attorneys for Plaintiff
             *Fresh Del Monte Produce Inc.*