UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FRESH DEL MONTE PRODUCE, INC.,                    :

                     Plaintiff,          :          <u>OPINION AND ORDER</u>

   -against-                                        :

                               :          13 Civ. 8997 (JPO) (GWG)

                               :

DEL MONTE FOODS, INC.,                             :

                Defendant.          :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Fresh Del Monte Produce, Inc. ("FDP") has brought this suit against Defendant

Del Monte Foods, Inc. ("DMFI") seeking a declaratory judgment, an injunction, and damages

for breach of contract based on a license agreement between the two parties.  <u>See</u> Complaint,

filed Dec. 19, 2013 (Docket # 1) ("Compl."), at 14-16 and ¶¶ 44, 55, 58, 64.[1]  DMFI has

counterclaimed for breach of contract under the same license agreement, trademark

infringement, and unfair competition.  <u>See</u> Del Monte Foods, Inc.'s Answer and Counterclaims

for: (1) Declaratory Judgment; (2) Breach of Contract; and (3) Trademark Infringement and

Unfair Competition, filed Mar. 31, 2014 (Docket # 16) ("Counterclaims"), at 22-23 and ¶¶ 69,

76-78.  DMFI has now moved to amend its answer and counterclaims.[2]  For the reasons that

---

[1] The complaint was originally brought against Del Monte Corporation ("DMC"), but
DMC subsequently sold its business to DMFI, which assumed the license agreement.  <u>See</u>
Stipulation and Order Amending Caption, filed Mar. 28, 2014 (Docket # 15).  The caption of the
case has been changed to reflect that DMFI is now the defendant.  <u>See id.</u>

[2]  <u>See</u> Del Monte Foods, Inc.'s Notice of Motion for Leave to File Its First Amended
Answer and Counterclaims, filed Aug. 20, 2014 (Docket # 25) ("DMFI Mot."); Del Monte
Foods, Inc.'s Memorandum of Law in Support of Its Motion for Leave to File Its First Amended

follow, that motion is granted.

I.      BACKGROUND

        A.      The License Agreement

DMFI's predecessor in interest, DMC, registered the "Del Monte" trademark (the "Mark") throughout much of the world.  See Compl. ¶ 2.  Pursuant to an agreement between the parties dated December 5, 1989 (the "License Agreement"), FDP possesses the exclusive right to use the Mark for "fresh fruit, fresh vegetables and fresh produce"; "certain refrigerated and frozen fruit products," including those made with fruit from a list of "Non-Utilized Fruit"; and certain "other, specified non-fresh products."  Id. ¶¶ 3, 14-15; see License Agreement Exhibit B (annexed as Ex. 1 to Aguiar Decl.), at 45.  The License Agreement permits FDP to add fruits to the Non-Utilized Fruit List when certain conditions are met.  See Compl. ¶¶ 15-17.  The parties have litigated issues arising under the License Agreement on two prior occasions, in 1998 and 2008.  See id. ¶¶ 19-23.

---

Answer and Counterclaims, filed Aug. 20, 2014 (Docket # 26) ("DMFI Mem."); Declaration of Abby F. Rudzin in Support of Del Monte Foods, Inc.'s Motion for Leave to File Its First Amended Answer and Counterclaims, filed Aug. 20, 2014 (Docket # 27) ("Rudzin Decl."); Declaration of William R. Sawyers in Support of Del Monte Foods, Inc.'s Motion for Leave to File Its First Amended Answer and Counterclaims, filed Aug. 20, 2014 (Docket # 28) ("Sawyers Decl."); Plaintiff Fresh Del Monte Produce Inc.'s Memorandum of Law in Opposition to Defendant Del Monte Foods, Inc.'s Motion for Leave to File Its First Amended Answer and Counterclaims, filed Sept. 8, 2014 (Docket # 29) ("FDP Mem."); Declaration of Lauren E. Aguiar, filed Sept. 8, 2014 (Docket # 30) ("Aguiar Decl."); Declaration of Phillip Brazlavsky, filed Sept. 8, 2014 (Docket # 31) ("Brazlavsky Decl."); Plaintiff Fresh Del Monte Produce Inc.'s Supplemental Memorandum of Law in Opposition to Defendant Del Monte Foods, Inc.'s Motion for Leave to File Its First Amended Answer and Counterclaims, filed Sept. 11, 2014 (Docket # 32); Del Monte Foods, Inc.'s Memorandum of Law in Further Support of Its Motion for Leave to File Its First Amended Answer and Counterclaims, filed Sept. 17, 2014 (Docket # 34) ("DMFI Supp. Mem.").

B.     The Parties' Claims

In this case, FDP claims that DMFI improperly refused to allow FDP to add avocado, pomegranate, coconut, and kiwi to the Non-Utilized Fruit list.  See Compl. ¶¶ 24-32.  FDP also alleges that DMFI or its licensees are using the Mark to sell frozen or refrigerated products containing Non-Utilized Fruit, including melon, berry, papaya, banana, coconut, pomegranate, and/or kiwi, even though FDP holds the exclusive right to use the Mark for these products.  See Compl. ¶¶ 33-37.

DMFI counterclaims that FDP improperly used the Mark on pureed, sterilized avocado products not made from Non-Utilized Fruit, see Counterclaims ¶¶ 26, 28-29, 34; used the Mark on avocado products that were misleadingly labeled as "fresh," see id. ¶¶ 26, 30, 38, 77; falsely told DMFI's licensees that they were interfering with FDP's exclusive rights to use the Mark for certain products, see id. ¶¶ 39, 44, 49, 54; and breached the License Agreement by improperly deeming coconut, pomegranate, kiwi, lemon, and lime added to the list of Non-Utilized Fruit, see id. ¶¶ 43, 48, 53, 58, 62.  DMFI further alleges that "FDP's use of the Mark, including in connection with the sale or distribution [sic] Hass Avocado and the Guac Products, constitutes infringement" under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).  Id. ¶ 76.

DMFI's proposed amendment to its counterclaims adds allegations that FDP "breached the License by manipulating the Mark" into a logo for its Nature Made line of products without DMFI's knowledge or consent, and that FDP "violated the Lanham Act by using a Logo so similar to the Mark that consumers will be misled or confused and will associate DMFI's goodwill with FDP's non-Del Monte products."  DMFI Mem. at 3; see Proposed First Amended Counterclaims (annexed as Ex. 1 to Rudzin Decl.), ¶¶ 63-72.

3

C.   Status of Discovery

On April 21, 2014, this Court issued a scheduling order for this case.  (Docket # 20) ("Scheduling Order").  That Order set June 30, 2014, as the deadline for the parties to amend their pleadings.  Id. ¶ 3(b).  On August 6, 2014, DMFI sought FDP's consent to allow DMFI to amend its counterclaims.  When consent was not forthcoming, DMFI filed the instant motion for leave to amend its answer and counterclaims on August 20, 2014.  See DMFI Mot.

At the time DMFI filed its motion for leave to amend, the parties had exchanged Rule 26 initial disclosures, FDP had produced discovery materials that had already been exchanged by the parties in prior litigation, and both sides had finalized their electronic search terms for document production.  See Rudzin Decl. ¶¶ 5-6; Aguiar Decl. ¶ 8.  FDP's attorneys were "well into the process of reviewing the documents" that had been yielded by the searches.  See Aguiar Decl. ¶ 11.  No document production resulting from the electronic searches had taken place, however.  See id.  Nor had the parties served interrogatories, noticed depositions, or served third-party subpoenas.  See Rudzin Decl. ¶ 6.  Fact discovery was not due to be concluded for six months.  See Scheduling Order ¶ 3(e).  Expert discovery was due to close approximately four months after that.  See id. at ¶ 3(I).

At a telephone conference held on December 4, 2014, the Court learned that document production is now largely completed but that no depositions have taken place yet or even been scheduled.

II.   APPLICABLE LAW

The parties have briefed the issue of whether leave to amend should be granted by reference to the standards under both Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure.  See DMFI Mem. at 4-9; DMFI Supp. Mem. at 2-10; FDP Mem. at 7-14.

4

A.      Rule 15(a)

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit."  Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing JennAir Prods. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D. Pa. 1968)).

The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion.  E.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The court may deny leave to amend for "good reason," which normally involves an analysis of the factors articulated in Foman: undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.  E.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citing Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973) and Middle Atl. Utils. Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir. 1968)).

"In gauging prejudice," a court considers, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)) (internal quotation marks omitted).  Obviously, "[u]ndue prejudice arises

5

when an amendment comes on the eve of trial and would result in new problems of proof." Id. (quoting Fluor Corp., 654 F.2d at 856) (internal quotation marks and alteration omitted). Nonetheless, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (quoting A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)) (internal quotation marks and alterations omitted). Therefore, "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." Id. (quoting U.S. ex rel Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989)).

  B.  Rule 16(b)

  Rule 16(b) provides that scheduling orders "must limit the time . . . to amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Once it is entered, a scheduling order may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4). The policy behind this rule is to "assure[] that at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment.

  The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.") (citations omitted); accord Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment ("[T]he court may modify the schedule upon a showing of good cause if it cannot be met despite the diligence of the party seeking the extension."). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in

advance of the motion deadline." Christians of Cal., Inc., 2014 WL 3605526, at *4 (quoting

Guity v. Uniondale Union Free Sch. Dist., 2014 WL 795576, at *2 (E.D.N.Y. Feb. 27, 2014)).

The burden of showing diligence rests on the moving party.  See Parker, 204 F.3d at 340.

      C.      Tension Between Rule 15(a) and Rule 16(b)

      There is an obvious tension between Rules 15(a) and 16(b).  See, e.g., Alioto v. Town of

Lisbon, 651 F.3d 715, 719 (7th Cir. 2011); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298

(4th Cir. 2008); Metro. Life Ins. Co. v. DePalo, 2014 WL 4681094, at *2 (D.N.J. Sept. 22, 2014)

(citation omitted).  On one hand, Rule 15(a) directs the court to grant leave to amend "freely."

On the other hand, Rule 16(b) states that the court should not amend a scheduling order without

a showing of "good cause."  The problem is that Rule 15(a)'s policy of freely allowing

amendments seemingly cannot be effectuated in situations where a party who has not acted

diligently seeks leave to amend after the date appearing in the Rule 16(b) scheduling order.  Of

course, as the Second Circuit noted in Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d

Cir. 2000), if Rule 15(a) were considered without reference to Rule 16(b), it "would render

scheduling orders meaningless and effectively would read Rule 16(b) and its good cause

requirement out of the Federal Rules of Civil Procedure."  Id. at 340 (quoting Sosa v. Airprint

Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam)).  In Parker, the Second Circuit

opined that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule

15(a), governs a motion to amend filed after the deadline a district court has set for amending the

pleadings."  Id. (citations omitted).  Parker concluded that "a district court does not abuse its

discretion in denying leave to amend the pleadings after the deadline set in the scheduling order

where the moving party has failed to establish good cause."  Id.

      Parker was not to be the last word, however.  Three years later, in  Grochowski v.

Phoenix Construction, 318 F.3d 80 (2d Cir. 2003), the Second Circuit held that where a scheduling order establishes a deadline for amending pleadings, "the lenient standard" of Rule 15(a) "must be balanced" against the good cause requirement of Rule 16(b). Id. at 86. Several years after that, Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007), confirmed that while the diligence inquiry under Rule 16(b) is "the primary consideration," it is not "the only consideration." Id. at 244. Rather, "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Id. In other words, in deciding whether there is "good cause" to amend under Rule 16(b), a trial court may consider not only the diligence of the moving party but also the prejudice to the opposing party. Thus, "[b]y requiring the district court to consider and balance factors other than a plaintiff's diligence, the [Second Circuit] left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment." Castro v. City of New York, 2010 WL 889865, at *2 (E.D.N.Y. Mar. 6, 2010).

Consistent with this case law, many district courts have undertaken a Rule 16(b) "good cause" analysis that considers prejudice to the opponent in addition to the moving party's diligence. See, e.g., Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc., 2013 WL 4526246, at *5-6 (S.D.N.Y. Aug. 27, 2013); Cummins, Inc. v. N.Y. Life Ins., 2012 WL 3870308, at *3-4 (S.D.N.Y. Sept. 6, 2012); Nycomed U.S. Inc. v. Glenmark Generics Ltd., 2010 WL 1257803, at *10-13 (E.D.N.Y. Mar. 26, 2010). Notably, in one case, Coale v. Metro-North Railroad Co., 2009 WL 4881077 (D. Conn. Dec. 11, 2009), the court found that the moving party had failed to show good cause to modify the scheduling order. See id. at *3. Nonetheless, the court allowed amendment largely because it would cause no prejudice to the opposing party,

aptly pointing out that "[s]cheduling orders are not the Code of Hammurabi."  Id.

A few district courts appear to have adopted a narrower view of the relationship between Rule 16(b) and Rule 15(a).  For example, some district courts have stated that "[t]he absence of prejudice to the non-moving party . . . is not alone sufficient to satisfy the good cause requirement of Rule 16(b)."  Int'l Media Films, Inc. v. Lucas Entm't, Inc., 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008) (citing Ratcliffe v. Pradera Realty Co., 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007)); accord G Investors Holding LLC v. Lincoln Benefit Life Co., Inc., 2012 WL 4468184, at *3 (S.D.N.Y. Sept. 25, 2012); Moore v. Publicis Groupe SA, 2012 WL 2574742, at *3 (S.D.N.Y. June 29, 2012).  But we do not read these courts' use of this language to reflect that a trial court is stripped of its discretion to grant leave to amend where the movant has failed to act diligently.  Indeed, as so construed, we could not reconcile such cases with Grochowski and Kassner.  Notably, the case that provided the language employed by these courts, Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (citing Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 218 (N.D. Ind. 1990)), was decided before Grochowski and Kassner.

Other courts have gone further and have asserted that "[t]he standards of Rule 16(b) must be met first and cannot be short-circuited by an appeal to those of Rule 15."  Sokol Holdings, Inc. v. BMB Munai, Inc., 2009 WL 3467756, at *5 (S.D.N.Y. Oct. 28, 2009) (citation, internal quotation marks, and emphasis omitted); accord In re Wireless Tel. Servs. Antitrust Litig., 2004 WL 2244502 at *5 (S.D.N.Y. Oct. 6, 2004); see also Woodworth v. Erie Ins. Co., 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009) (denying a motion to amend despite the lack of prejudice to the opposing party because the moving party had "failed to meet the threshold diligence requirement").  For the reasons already stated, we respectfully disagree with such

decisions.  We note that the original source of this quotation is merely a parenthetical in Parker

that was quoting a case from another circuit.  See 204 F.3d at 340 (quoting Johnson v. Mammoth

Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992)).  More to the point, the quotation is

inconsistent with the principles stated by the Second Circuit in Grochowski and Kassner, which

make clear that a district court has discretion to consider Rule 15(a) factors notwithstanding the

failure to show good cause for violating a Rule 16(b) deadline.

Accordingly, we conclude that, in appropriate circumstances, a district court has

discretion to grant a motion to amend even where the moving party has not shown diligence in

complying with a deadline for amendments in a Rule 16 scheduling order.

III.   DISCUSSION

FDP argues that it developed the Nature Made logo in early 2010 and that it has been

selling products bearing the Nature Made logo in the United States since June 2011.  Brazlavsky

Decl. ¶¶ 6, 9.  It  contends that the products it launched in July 2014 were merely new products

in its already-established Nature Made line.  See FDP Mem. at 5; Brazlavsky Decl. ¶ 10.  For its

part, DMFI contends that it did not learn about the allegedly infringing Nature Made logo until

July 2014.  See DMFI Mem. at 3; Sawyers Decl. ¶ 2; id. Ex. 1.  By that time, the deadline for

amending the pleadings had already passed.  See Scheduling Order ¶ 3(b).

In the end, we do not find it necessary to resolve this aspect of the dispute for two

reasons.  First, we would allow leave to amend even if we determined that DMFI might have

learned about the Nature Made products sooner based on our analysis of the Foman factors, as

discussed below.  Additionally, FDP in fact makes no argument that DMFI's motion should be

denied based on DMFI's lack of diligence.  Instead, FDP argues that the motion should be

denied because inclusion of new claims will result in prejudice and, relatedly, because the new

10

claims arise out of different facts as the original claims.  See FDP Mem. at 8-14.

      As discussed already, the case is relatively early in the discovery process.  At the time of DMFI's motion to amend, there had been no depositions taken, no interrogatories served, see Rudzin Decl. ¶ 6, and fact discovery was not scheduled to conclude until six months later, see Scheduling Order ¶ 3(e).  The entire discovery process was not scheduled to conclude until four months after that.  See id. ¶ 3(i).  To date, the parties have neither taken nor scheduled any depositions, they have not identified experts or exchanged expert reports, they have not made motions for summary judgment, and there is no trial date set.

      While we accept FDP's contention that DMFI's amendment would necessitate additional discovery, see FDP Mem. at 12-13, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice."  Christians of Cal., Inc., 2014 WL 3605526, at *5 (alterations, citation, and quotation marks omitted).  An amendment to the counterclaims at this early stage is a far cry from an "eve of trial" amendment that courts have found would cause undue prejudice.  Ruotolo, 514 F.3d at 192 (citation and quotation marks omitted).  It is also very different from cases cited by FDP in which amendments to add new claims were sought after discovery was completed.  See, e.g., Ansam Assocs. Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend in part because discovery was complete and a motion for summary judgment had been filed); Baez v. Delta Airlines, Inc., 2013 WL 5272935, at *7-8 (S.D.N.Y. Sept. 18, 2013) (denying motion to amend where discovery was completed and amendment would require redeposition of witnesses).

      While we expect that the amendment DMFI proposes will require FDP to expend additional resources and that the discovery schedule will need to be extended, we do not consider

that the new claims will result in a "significant[]" delay in the larger scheme of things.  Ruotolo,

514 F.3d at 192 (citation and quotation marks omitted).  Instead, we believe that the need for the

additional document discovery will require that the start of depositions be delayed by eight to ten

weeks from when they otherwise would have begun.  It may be that the expert discovery period

will not even need a similar time extension.  Moreover, there will be efficiencies achieved by

having the amended counterclaim included in this litigation, including overlap in witnesses from

both sides and some limited overlap in areas to be addressed by expert witnesses.

　　　　Importantly, any additional possible burdens created by the new claims must be viewed

against the alternative of having DMFI file a separate lawsuit raising these claims.  Such a

lawsuit would be between the identical parties raising issues under the same license agreement

and would certainly involve duplication of effort — for example, of depositions of key actors

from both companies.  The delay that may be occasioned by the additional discovery on the

proposed new counterclaim allegations will be relatively minor given that fact depositions,

expert witness discovery, summary judgment motions, and a trial have yet to occur.[3]

　　　　We accept FDP's contention that there is some dissimilarity between the existing claims

and the proposed amendment to the counterclaim.  See FDP Mem. at 9.  However, while

dissimilarity in a proposed new claim will sometimes increase delay and resulting prejudice, and

make it more likely that there will be no efficiency to be gained from permitting its inclusion, we

are unaware of any interpretation of Rule 15(a) that views it as setting up a per se bar to the

---

[3] This ruling should not be construed as opining on the question of whether trial of the new claims together with the existing claims would "confuse the jury," as FDP argues.  FDP Mem. at 14.  Any such arguments may be made in a motion for a separate trial under Fed. R. Civ. P. 42(b).

inclusion of unrelated claims.[4]  Certainly, claims that do not arise out the "conduct, transaction or occurrence" set forth in the original pleading will not relate back to the original filing date for statute of limitations purposes.  See Fed. R. Civ. P. 15(c)(1)(B).  But Rule 15 does not otherwise speak to the propriety of adding new claims that are dissimilar to the original claims.  Instead, the degree of relatedness of the proposed claims will ultimately be considered as part of the analysis required by Foman.  See, e.g., Baez, 2013 WL 5272935, at *8 (noting that the addition of "new claims dealing with topics not explored through discovery" would result in significant delay); Lopez v. Smiley, 375 F. Supp. 2d 19, 30 (D. Conn. 2005) (allowing unrelated new claims would cause "undue delay" where their inclusion would require "a new round of discovery").  Here, there has been no showing of bad faith.  FDP has not argued any undue delay or futility of the amendment.  No new parties will be added.  The discovery deadlines will not need to be significantly extended.  As already described, we see relatively little prejudice to FDP in the inclusion of the new claims.  Certainly, any prejudice is far outweighed by the judicial economy to be achieved by hearing all claims between these parties in one lawsuit.  Accordingly, the motion for leave to amend is granted.

IV.    CONCLUSION

       For the reasons stated above, defendant/counterclaim-plaintiff DMFI's motion for leave to amend its answer and counterclaims (Docket # 25) is granted.  The proposed pleading shall be filed forthwith.  The parties should consult on the adjustments that will need to be made to the existing discovery schedule and make an appropriate application to the Court.

_____

       [4] FDP makes reference in a footnote to Rule 13(e) — the rule governing supplemental counterclaims, suggesting that a supplemental counterclaim under Rule 13(e) must arise out of the "same transaction or occurrence."  FDP Mem. at 11 n.4.  We do not reach this question, however, inasmuch as FDP has not briefed the applicability of Rule 13(e) here.

13

SO ORDERED.

Dated:  December 8, 2014
        New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge