UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FRESH DEL MONTE PRODUCE, INC.,                  :

                Plaintiff,                  :              <u>OPINION AND ORDER</u>

                                :

   -against-                  :              13 Civ. 8997 (JPO) (GWG)

                                :

                                :
DEL MONTE FOODS, INC.,
                                :
              Defendant.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff and counterclaim-defendant Fresh Del Monte Produce, Inc. ("FDP") filed this diversity action against defendant and counterclaim-plaintiff Del Monte Foods, Inc. ("DMFI")'s predecessor in interest to enforce its right to use the "Del Monte" trademark on certain products under a 1989 licensing agreement (the "License Agreement").  <u>See</u> Complaint, filed Dec. 19, 2013 (Docket # 1), ¶¶ 1-3; Stipulation and Order Amending Caption, dated Mar. 28, 2014 (Docket # 15).  DMFI counterclaimed for breach of the same agreement and for trademark infringement.  <u>See</u> Del Monte Foods, Inc.'s Answer and First Amended Counterclaims, filed Dec. 10, 2014 (Docket # 40), at 10 ¶ 4.  FDP now seeks to compel DMFI to produce certain communications between DMFI and its licensees, who are not parties to this suit.[1]  DMFI

_____

[1]  <u>See</u> Letter from Lauren E. Aguiar, dated Feb. 25, 2015 and filed Feb. 27, 2015 (Docket # 54) ("FDP Mot."); Del Monte Foods, Inc.'s Opposition to Fresh Del Monte Produce Inc.'s Motion to Compel, filed Mar. 5, 2015 (Docket # 57) ("DMFI Opp'n"); Declaration of Timothy Ernst in Opposition to Fresh Del Monte Produce Inc.'s Motion to Compel, filed Mar. 5, 2015 (Docket # 58) ("Ernst Decl."); Declaration of Laura E. Perry in Opposition to Fresh Del Monte Produce Inc.'s Motion to Compel, filed Mar. 5, 2015 (Docket # 59) ("Perry Decl."); Fresh Del Monte's Reply in Support of Its Motion to Compel, filed Mar. 9, 2015 (Docket # 60) ("FDP Reply").

contends these communications are protected by the attorney-client privilege and the work product doctrine.  For the reasons that follow, FDP's motion is granted, and DMFI is ordered to produce the communications to FDP.

I.      BACKGROUND

        The Court has summarized the allegations in this case in a prior opinion.  See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 172-73 (S.D.N.Y. 2014).  In brief, FDP and DMFI's predecessor in interest, Del Monte Corporation, entered into a License Agreement in 1989 under which Del Monte Corporation granted FDP a license to use the Del Monte trademark (the "Mark") on various products, including certain products containing ingredients on a list of "Non-Utilized Fruit."  Ex. 1 to Perry Decl. (excerpt from License Agreement relating to the Non-Utilized Fruit list); see FDP Mot. at 1; DMFI Opp'n at 1; Perry Decl. ¶ 4.  Per the License Agreement, that list consisted of berry, banana, papaya, and melon, but FDP had the right to request that other fruits be added to the list.  See Ex. 1 to Perry Decl. However, DMFI had the right to refuse such a request if it was already using the Mark on a canned or frozen product containing the fruit in question.  See id.; DMFI Opp'n at 1-2.

        Sometime in late 2012, DMFI learned that FDP was using the Mark on refrigerated, processed avocado products.  Ernst Decl. ¶ 6.  DMFI's in-house counsel sent FDP a cease-and-desist letter on January 25, 2013.  See id. ¶¶ 1, 6; Ex. 1 to Ernst Decl.  FDP then requested to add avocado to the Non-Utilized Fruit list, see Ernst Decl. ¶ 7; Ex. 2 to Ernst Decl., but DMFI refused this request because, it asserted, avocado did not meet the requirements to be listed as Non-Utilized Fruit under the License Agreement, see Ernst Decl. ¶ 9; Ex. 3 to Ernst Decl.  Over the next year, FDP requested to add coconut, pomegranate, kiwi, lemon, and lime to the Non-Utilized Fruit list.  See FDP Mot. at 1; Exs. B & D to FDP Mot.; DMFI Opp'n at 2; Ernst Decl.

2

¶¶ 10, 12.  DMFI refused each of these requests by letter.  Ernst Decl. ¶¶ 10-12; see Ex. 4 to
Ernst Decl.; FDP Mot. at 1.  On October 29, 2013, FDP sent letters to DMFI's licensees
indicating that FDP had rejected DMFI's refusal and therefore deemed avocado, pomegranate,
coconut, and kiwi added to the Non-Utilized Fruit list.  See Ex. H to FDP Mot.  The letters told
the DMFI licensees that FDP retained the exclusive right to use the Mark on chilled or
refrigerated products using those fruits.  Id.

 Both before and after these letters — in the time period from April to November 2013 —
DMFI's in-house counsel Tim Ernst and paralegal De Ann Freitag had a number of email
exchanges with certain DMFI licensees.  DMFI Opp'n at 2; see Ernst Decl. ¶¶ 1, 4, 14-16; Ex. A
to FDP Mot. (DMFI's revised privilege log); Exs. C, E, F, G & I to FDP Mot. (redacted versions
of the emails in question).  FDP puts these communications into three categories: 1)
communications between DMFI and its licensees after FDP's March 29, 2013 request to add
coconut to the Non-Utilized Fruit list, 2) communications between DMFI and its licensees after
FDP's October 8, 2013 request to add kiwi to the Non-Utilized Fruit list, and 3) communications
between DMFI and its licensees after FDP's October 29, 2013 letters to the licensees regarding
FDP's right to use the Mark.  FDP Mot. at 2 & Appendix A.  DMFI has withheld all of these
email exchanges from production on the grounds of attorney-client privilege and the work
product doctrine.  See FDP Mot. at 1-2; Ex. A to FDP Mot. (numbers 34-46, 49-50(b)).

 Following briefing on the motion to compel, the Court directed DMFI to submit the
documents that are the subject of the motion for in camera review.  See Order dated May 8, 2015
(Docket # 83).  The Court has reviewed each of the documents.

II.   CHOICE OF LAW

 Where, as here, a case includes federal and state law claims and the evidence sought is

3

relevant to both, "the asserted privileges are governed by the principles of federal law." von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (citing cases); accord Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011). Additionally, "'federal law governs the applicability of the work product doctrine in all actions in federal court.'" Weber v. Paduano, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (quoting Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., 1998 WL 729735, at *4 (S.D.N.Y. Oct. 16, 1998)) (additional citation omitted). We therefore apply federal law to decide the issues raised by this motion.

III.   ATTORNEY-CLIENT PRIVILEGE

    A.   Privilege Law Generally

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976). However, the privilege "should be narrowly construed and expansions cautiously extended." United States v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999) (citation omitted); see In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (because the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence,' . . . '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle'") (citing 8 Wigmore, Evidence § 2192, at 70 (McNaughton rev. 1961)). The proponent of the privilege bears the burden of establishing its existence. E.g., United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (citing von Bulow, 811 F.2d at 144).

    B.   The Common Interest Doctrine

The doctrine under which DMFI claims attorney-client privilege for the communications is the "common interest doctrine" or "joint defense" privilege, which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where

4

a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).  It "applies where parties are represented by separate counsel but engaged in a common legal enterprise." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995). The nature of the parties' common interest must be legal and not solely commercial.  SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) (quoting N. River Ins. Co. v. Columbia Cas. Co., 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)); Bank Brussels Lambert, 160 F.R.D. at 447.  Thus, to obtain the benefit of the common interest doctrine, the party claiming the protection of attorney-client privilege must demonstrate "that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy."  United States v. Ghavami, 882 F. Supp. 2d 532, 537 (S.D.N.Y. 2012) (citation omitted); accord Schaeffler v. United States, 22 F. Supp. 3d 319, 330 (S.D.N.Y. 2014).

Because the common interest doctrine requires the common interest to be legal, and not merely commercial, it "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." Bank Brussels Lambert, 160 F.R.D. at 447. "Although the distinction between a common legal, as opposed to commercial, interest is somewhat murky, a common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation . . . or have formed a coordinated legal strategy."  In re Subpoena Duces Tecum Served on N.Y. Marine & Gen. Ins. Co, 1997 WL 599399, at *4 (S.D.N.Y. Sept. 26, 1997) (citations and internal quotation marks omitted).

Some case law suggests that a party seeking to invoke the common interest doctrine must have an "identical" legal interest.  E.g., In re Rivastigmine Patent Litig., 2005 WL 2319005, at

*2 (S.D.N.Y. Sept. 22, 2005) (citing cases); Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (citation omitted).  However, "more recent cases have held that the parties need not have 'total identity of interest' as long as 'a limited common purpose necessitates disclosure to certain parties.'"  Egiazaryan v. Zalmayev, 290 F.R.D. 421, 434 (S.D.N.Y. 2013) (quoting Eugenia VI Venture Holdings, Ltd. v. Chabra, 2006 WL 1096825, at *1 (S.D.N.Y. Apr. 26, 2006)) (additional citations omitted); accord Schaeffler, 22 F. Supp. 3d at 330-31 (citing cases); Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc., 2009 WL 3786210, at *2 (E.D.N.Y. Nov. 12, 2009) (citing cases).

      C.     Analysis

      DMFI argues that the communications between its counsel and the licensees are protected by the common interest doctrine.  See DMFI Opp'n at 2-3.  FDP argues that the common interest doctrine does not protect communications between DMFI's counsel and its licensees because DMFI has not shown that it shares a legal interest with the licensees as opposed to merely a commercial interest and also because DMFI has not demonstrated that it had a coordinated legal strategy with its licensees.  See FDP Mot. at 3-4; FDP Reply at 3-8.  DMFI counters that it shares a legal interest with the licensees inasmuch as FDP has claimed the exclusive right to use the Mark on certain products that the licensees are marketing under the Mark, which affects the licensees' rights and liabilities as well as DMFI's.  See DMFI Opp'n at 6-8.  DMFI also claims that it was working with the licensees to formulate a legal strategy in response to FDP's requests to add fruit to the Non-Utilized Fruit list and its letters to the licensees.  See id. at 9-10.

      We need not consider the issue of whether the parties' common interest is legal or merely commercial because DMFI has not met its burden of showing that the communications were

6

"made in the course of formulating a common legal strategy." Schaeffler, 22 F. Supp. 3d at 330; see Bank Brussels Lambert, 160 F.R.D. at 447 ("In practice, [the parties among whom privileged matter is shared] must have demonstrated cooperation in formulating a common legal strategy."). Importantly, the issue for this prong of the analysis "is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." In re Rivastigmine, 2005 WL 2319005, at *4 (quoting In re Application of FTC for Order Compelling Avrett Free & Ginsberg to Comply with a Subpoena for Documentary Material, 2001 WL 396522, at *3 (S.D.N.Y. Apr. 19, 2001)) (quotation marks omitted). Such cooperation may be demonstrated through evidence of an agreement between the parties to jointly litigate, or evidence of a coordinated legal strategy by the parties — particularly where both parties are represented by the same counsel, are actively involved in the litigation, exercise control over it, or contribute to legal expenses. See Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) (citing N. River Ins. Co., 1995 WL 5792, at *5).

DMFI has offered no such evidence. That is, there is no evidence showing that a decision was made to undertake a coordinated legal strategy, let alone evidence showing the nature of the efforts that were made to pursue such a strategy. Instead, DMFI points to the fact that the communications arose shortly after it and the licensees received letters from FDP, that the emails show that they related to FDP's claims, and that DMFI's counsel used information from the licensees in his response to FDP on behalf of DMFI and the licensees. See DMFI Opp'n at 10; Ernst Decl. ¶¶ 14-16 (summarizing exchanges between members of DMFI's legal department with representatives of licensees). Certainly, the record reflects that the licensees cooperated by providing DMFI with information that DMFI later used to respond to FDP. See Ernst Decl. ¶¶ 14, 15 (licensees provided information about products it was marketing under the

Mark).  But DMFI's claim that the licensees cooperated in "formulating" DMFI's legal strategy is not supported by any evidence.  First, the affidavit offered by DMFI contains indications that DMFI formulated its own legal strategy independent of any input from the licensees.  See id. ¶¶ 14-15 (Ernst and Freitag "explained [DMFI's counsel's] proposed legal strategy" to licensees so that DMFI and the licensees could "coordinate [their] efforts" to respond to FDP's requests to add fruit to the Non-Utilized Fruit list).  Additionally, the mere fact that a licensee provided basic information to DMFI about products it marketed under the Mark, see id., or requested and received DMFI's guidance on how to proceed, see id. ¶ 16 (DMFI's counsel reviewed a draft response to FDP from a licensee's representative and advised that representative how to proceed), does not establish that the parties "coordinated" in formulating a legal strategy.  These actions show at best that the licensees "theoretically share" a similar interest with DMFI in the ultimate adjudication of FDP's claims.  They do not show the kind of coordinated effort to devise a response that we would expect to see from parties who had undertaken to act together in pursuit of a common legal interest.  See In re Rivastigmine, 2005 WL 2319005, at *4-5 (no common legal interest established where proponent did not describe "facts from which even an implicit common strategy could be inferred").  Additionally, the Court has reviewed the communications at issue.  They provide no additional evidence that DMFI and its licensees were engaged in formulating a common legal strategy.  In essence, they show only what was already suggested by DMFI's submissions in opposition to FDP's motion to compel: that DMFI's licensees cooperated with DMFI by providing factual information that DMFI sought from them. There is no evidence that the licensees had any hand in formulating a joint legal strategy or that they had at any time agreed to pursue a common legal goal with DMFI.

        For these reasons, we conclude that DMFI has not met its burden to establish that the

communications are entitled to protection under the attorney-client privilege.

IV.    THE WORK PRODUCT DOCTRINE

   A.    Applicable Law

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative" unless a showing of substantial need and inability to obtain the materials without undue hardship is made. The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)); cited in In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383-84 (2d Cir. 2003).

   The party asserting work product protection "bears the burden of establishing its applicability to the case at hand." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 384 (citing cases); see, e.g., Mount Vernon Fire Ins. Co., 1998 WL 729735, at *4. The party asserting the protection must show "that material it seeks to protect (1) was prepared in anticipation of litigation and (2) was prepared by or for a party, or by his representative." Koch v. Greenberg, 2012 WL 1449186, at *5 (S.D.N.Y. Apr. 13, 2012) (citing In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 383-84).

   A document is prepared in anticipation of litigation if "'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Adlman, 134 F.3d at 1202 (emphasis in original) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,

Federal Practice and Procedure § 2024, at 343 (1994)) (additional citations omitted).  Adlman established that documents prepared both for litigation and business purposes may be protected under Rule 26(b)(3).  See id. at 1195.  Whether work product protection applies turns on whether the material "would have been prepared irrespective of the expected litigation."  Id. at 1203-04. Indeed, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" documents, id. at 1204, or that "such documents might also help in preparation for litigation," id. at 1202, work product protection is not available for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation," id.; accord Int'l Design Concepts v. Saks Inc., 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006); Gulf Islands Leasing, Inc., 215 F.R.D. at 474-75; Stephenson Equity Co. v. Credit Bancorp, Ltd., 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002).

    B.    Analysis

    DMFI asserts that several of the communications that FDP has requested are protected by the work product doctrine.  See DMFI Opp'n at 12-15.  As noted, under Rule 26(b)(3), the burden of establishing that communications are protected by the work product doctrine rests with the party invoking its protection.  See, e.g., In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 384.  To show that the communications at issue are protected work product, DMFI notes that its counsel "believed that litigation would likely ensue" and that he communicated with DMFI's licensees "in order to obtain the information that he anticipated he would need to use in this litigation."  DMFI Opp'n at 13 (citing Ernst Decl. ¶¶ 7-8, 14-15).

    This is helpful as far as it goes, but even if "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of" certain

documents, Adlman, 134 F.3d at 1204, or that "such documents might also help in preparation for litigation," id. at 1202, there is more to the inquiry.  Even in such a case, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation" are not protectable under the work product doctrine.  Id.

      DMFI argues that the communications with its licensees are not "ordinary business communications" because they arose in response to FDP's requests to add fruits to the Non-Utilized Fruits list.  DMFI Opp'n at 14.  DMFI argues that the communications were engendered by "litigation letters" between DMFI's counsel and FDP's counsel.  See id. at 13.  The first such "litigation letter" that DMFI refers to is apparently FDP's request to add certain fruits to the Non-Utilized Fruits list.  See id. at 13-14.  The next "litigation letter" is one in which DMFI declined that request, explained that decision by construing the relevant provision of the License Agreement, and requested additional information from FDP as to its avocado products.  See id.; Ex. 4 to Ernst Decl.  But this letter and the other "litigation letter" mentioned by DMFI, see DMFI Opp'n at 13; Ex. 5 to Ernst Decl., were products of the terms of the License Agreement, which contemplated that FDP would make a "written request" of DMFI to permit other fruit to be deemed "Non-Utilized Fruit."  Ex. 1 to Perry Decl.  The License Agreement contemplated that, in response, DMFI would make a decision as to whether to give its consent.  See id.  DMFI has taken the position that whether its licenses were using certain products was relevant to whether it was required to give its consent.  See DMFI Opp'n at 1-2; Ex. 6 to Ernst Decl.  Thus, the evidence strongly suggests that DMFI would have made the inquiries of its licensees at issue in this motion simply in order to make efforts to comply with the License Agreement's scheme for responding to FDP's request to add to the Non-Utilized Fruit list.

      DMFI points to the fact that these communications did not concern DMFI's and its

licensees' "day-to-day operations."  DMFI Opp'n at 15.  But the relevant inquiry is whether

those communications would have been created in the ordinary course of business, or would

have taken essentially the same form, absent the prospect of litigation — in other words, if they

were created "because of" the anticipated litigation.  Adlman, 134 F.3d at 1202.  This inquiry

requires the Court to "consider what would have happened had there been no litigation threat."

Wultz v. Bank of China Ltd., 304 F.R.D. 384, 395 (S.D.N.Y. 2015) (quoting Allied Irish Banks

v. Bank of Am., N.A., 240 F.R.D. 96, 106 (S.D.N.Y. 2007)) (internal quotation marks omitted).

Ernst's statement that the communications were meant to assist him in "providing legal advice"

to DMFI and "coordinating [DMFI]'s and its licensees' legal strategy," Ernst Decl. ¶¶ 14, 15;

see id. ¶ 16, simply does not address what "would have happened" had the letters been sent

regarding the use of Non-Utilized Fruit and DMFI believed that it was not likely to be sued.

Moreover, it seems obvious that DMFI necessarily would have inquired of its licensees as to

their usage of the Non-Utilized Fruit given DMFI's interpretation of the License Agreement.  In

other words, upon receiving FDP's request to add fruit to the Non-Utilized Fruit list, DMFI

would have had to obtain information from its licensees about the products they were marketing

using the Mark in order to formulate its response.  See Ex. 6 to Ernst Decl. (letter from DMFI to

FDP explaining its reading of this portion of the License Agreement with reference to its

licensees); DMFI Opp'n at 13 ("[T]he information provided by the licensees (i.e., the product

information) was incorporated into and even attached to [DMFI]'s responses to FDP's

requests.").  We therefore cannot make the finding that the communications would not have

occurred in essentially similar form even if counsel had not anticipated litigation.  Accordingly,

DMFI has not met its burden to establish that the communications at issue are entitled to

protection under the work product doctrine.

V.    CONCLUSION

For the reasons stated above, FDP's motion to compel production of the identified email communications between DMFI and its licensees (Docket # 54) is granted.

SO ORDERED.

Dated: May 28, 2015
         New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

13