UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
FRESH DEL MONTE PRODUCE INC.,                              :
                                                           :
                                    Plaintiff,             :
                                                           :
             -v-                                           :
                                                           :
DEL MONTE FOODS, INC.,                                     :
                                                           :
                                    Defendant.             :          13-CV-8997 (JPO)
-------------------------------------------------------- :
                                                           :          OPINION AND ORDER
DEL MONTE FOODS, INC.,                                     :
                                                           :
                           Counterclaim-Plaintiff,         :
                                                           :
             -v-                                           :
                                                           :
FRESH DEL MONTE PRODUCE, INC.,                            :
                                                           :
                           Counterclaim-Defendant.         :
-----------------------------------------------------------:
                                                           X

J. PAUL OETKEN, District Judge:

        Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Fresh Del Monte Produce

Inc. ("Fresh Del Monte") has moved to dismiss portions of the counterclaims of Defendant Del

Monte Foods, Inc. ("Del Monte Foods").  (Dkt. No. 70.)  In sum, Fresh Del Monte argues that

Del Monte Foods' counterclaims concerning so-called "Medley products" and "Combination

products" should be dismissed under the doctrine of claim preclusion, and that Del Monte Foods'

request for termination of a longstanding license agreement between the two firms should be

dismissed as insufficiently pleaded.  For the reasons that follow, Fresh Del Monte's motion to

dismiss is granted in part and denied in part.

# I.   Background

## A.   Prior Litigation

The parties in this case have a long history together—both in and out of court.  Prior to 1989, the Del Monte Corporation comprised two separate divisions.[1]  (Dkt. No. 66 ("Countercl.") ¶ 11.)   Using the "Del Monte" name and trademark ("the Mark"), one division manufactured and sold fresh fruit, while the other manufactured and sold processed fruits and vegetables.

In 1989, the Del Monte Corporation—which is the predecessor in interest to Defendant Del Monte Foods—sold its fresh division to Polly Peck International, PLC, the predecessor in interest to Plaintiff Fresh Del Monte.  (*Id.* ¶ 12.)  As part of the transaction, the parties entered into a licensing agreement granting Fresh Del Monte the "perpetual, exclusive, royalty-free right and license to use the [Mark] . . . on or in connection with the production, manufacture, sale, and distribution of THE PRODUCTS."  (Dkt. No. 71-1 ("License") at 3 (emphasis in original).) "The products," as defined in Exhibit B to the License, are "fresh fruits, fresh vegetables and fresh produce."  (*Id.* at 45-48.)   Expressly excluded from this definition are "any products which have been heat treated or sterilized for the purpose of rendering such products shelf-stable" and any "frozen vegetables, frozen produce and frozen fruit," except as otherwise specified.  (*Id.*)  The License further provides that Del Monte Foods may use the Mark "solely in connection with all aspects of the business relating to THE PRODUCTS and not to other products or services."  (*Id.* at 3.)

---

[1] Unless otherwise noted, the following facts are alleged in Defendant's second amended counterclaims or in documents incorporated therein by reference, and they are assumed true for purposes of the instant motion.  The Court draws from the records developed in prior litigation between the parties, as these are both referenced by Defendant in its counterclaims and are, independently, public documents of which the Court may take judicial notice.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

In 1998, the Del Monte Corporation filed suit against Fresh Del Monte, accusing it of selling "cut refrigerated fresh fruit" outside the scope of the License.  *Del Monte Corp. v. Del Monte Fresh Produce*, No. 98-CV-4060, Dkt. No. 29 (S.D.N.Y. Mar. 18, 1999) ("*Del Monte I*"). (*See* Dkt. No. 71-2 at 5.)  Following a bench trial, Judge Jed S. Rakoff held that Fresh Del Monte had the right to use the Mark in connection with the cut, refrigerated, and packaged foods at issue.  (Dkt. No. 71-4 at 15.)  Although the court noted that the License is "'riddled' with ambiguity," it concluded that the License's terms reflect a "fundamental division . . . between fresh and other things."  (*Id.* at 14-15.)  Where the parties failed to define with specificity the scope of the license, resort must be made to that basic division between fresh and non-fresh food. (*Id.* at 14-15.)  But to the extent the parties "expressly stated" what "particular kinds of foods fell on one side or the other of the basic line between fresh and non-fresh" these express provisions must control.  (*Id.* at 14.)

The *res judicata* question at the heart of this motion concerns a subsequent 2008 lawsuit between Fresh Del Monte and Del Monte Foods.  *Fresh Del Monte Produce Inc. v. Del Monte Foods Co. and Del Monte Corp.*, No. 08-CV-8718 ("*Del Monte II*").  As relevant here, Del Monte Foods brought counterclaims against Fresh Del Monte charging that the latter was using the Mark in connection with "several lines of 'medley' products"—products that combine "caramel, cheddar cheese, and dipping sauces" and other *non-fresh* products with *fresh* products. (Dkt. No. 71-5 ¶ 5.)  In addition to claims for breach of contract and trademark infringement, Del Monte Foods sought a declaratory judgment that "Fresh Del Monte [] violated the terms of the 1989 License through the sale of its 'medley' products."  (*Id.* ¶ 46; *see id.* ¶¶ 26-46.)  Discovery on the medley issue proceeded, including document production and the designation of witnesses for deposition testimony.  (*See* Dkt Nos. 71-8, 71-9, 71-10.)

In 2012, Del Monte Foods sought to withdraw its counterclaims without prejudice but Fresh Del Monte objected, noting the "late stage at which Del Monte Foods seeks dismissal" and that "discovery ha[d] long since closed." (Dkt. No. 11.) Judge Sidney H. Stein instructed Del Monte Foods that any dismissal of its counterclaims would be with prejudice. (Dkt. No. 71-12 at 12.) In turn, the counterclaims were withdrawn with prejudice on January 24, 2012. (Dkt. No. 71-13.) As Judge Stein explained prior to withdrawal, dismissal with prejudice would "leave for another day a judicial delineation as to what claims" would be thereby precluded from further litigation. (Dkt. No. 71-12 at 15.) Today is that other day.

**B.     The Instant Case**

The complaint in this action was filed by Fresh Del Monte on December 19, 2013. (Dkt. No. 1.) An amended complaint was filed on March 27, 2015. (Dkt. No. 63.) Del Monte Foods filed its answer and second amended counterclaims on March 30, 2015. (Countercl.) Now Fresh Del Monte has moved to dismiss portions of those counterclaims. (Dkt. No. 70.)

Del Monte Foods asserts counterclaims for declaratory judgment, breach of contract, and trademark infringement and unfair competition. (Countercl. ¶¶ 112-130.) It alleges that Fresh Del Monte is violating the License in two ways: first, by using the Mark on "Combination products"—products that "combine[] *refrigerated fruit* (fresh or non-fresh) with [] vegetables or produce" (Countercl. ¶ 95 (emphasis in original)); and second, by using the Mark on "Medley products"—products that combine "fresh fruits or vegetables with a product that is not made entirely from fruits, vegetables, or produce" (*Id.* ¶ 96). Despite being prohibited from doing so under the License, Fresh Del Monte "is continuing to use the Mark on more than 100 different"

varieties of such products, including products that combine "grapes and cheese, vegetables and ranch dip," and "apples with caramel."[2]  (*Id.* ¶ 100.)

   Del Monte Foods acknowledges that in *Del Monte II* it "brought claims concerning [Fresh Del Monte's] use of the Mark on a small number of similar products" and that "those claims were dismissed before the issues were litigated or resolved."  (*Id.* ¶ 99.)  Accordingly, it "is not bringing the claims that were or could have been brought at that time—i.e. claims for [Fresh Del Monte's] unlawful use before 20[10] of the Mark on any product."[3]  (*Id.*)

   For its part, Fresh Del Monte argues that claim preclusion should bar all counterclaims related to Medley products, including post-2010 sales of the products at issue in *Del Monte II* and claims based on variations of Medley products created after *Del Monte II*.  (Dkt. No. 70 at 23-24.)  Counterclaims based on the Combination products, it argues, should also be dismissed under claim preclusion and because the License, by its terms and as construed by Judge Rakoff in *Del Monte I*, grants Fresh Del Monte the exclusive right to use the Mark on such goods.  (*Id.* at 25-28.)

   Finally, in its counterclaim for breach of contract, Del Monte Foods states that "[i]n light of [Fresh Del Monte's] repeated and material breaches of the License, termination of the License is warranted."  (Countercl. ¶ 122.)  Fresh Del Monte argues that this claim for termination should be dismissed as the License does not permit termination under these circumstances and because

---

[2] Del Monte Foods also asserts counterclaims against Fresh Del Monte for License violations concerning avocado, coconut, pomegranate, kiwi, lemon, and lime products, an "unauthorized variation of the Mark," and certain juice beverages.  (Countercl. ¶¶ 30-92, 101-111.)  Because Fresh Del Monte has not moved to dismiss these counterclaims, they are not at issue on this motion.

[3] Del Monte Foods concedes that "paragraph 99 of the Counterclaims incorrectly asserts claims back to 2008 (when [Del Monte Foods'] counterclaims were originally filed in *Del Monte II*) rather than 2010 (when its counterclaims were refiled)."  (Dkt. No. 85 at 4 n.3.)

Del Monte Foods has failed to plausibly allege the elements needed to support a claim for termination.  (Reply at 8-13.)

## II.    Discussion

### A.    Motion to Dismiss Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted).

When determining the sufficiency of a claim under Rule 12(b)(6), courts normally consider only the allegations on the face of the pleading.  However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Thus, insofar as Defendant's counterclaims rely on an agreement between the parties, "we need not accept its description of those terms, but may look to the agreement itself."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  Courts may also take judicial notice of public documents, such as court filings in related litigation.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *see Smith v. DADA Entm't, LLC*, 11-CV-7066, 2012 WL 4711414, at *2 n.1 (S.D.N.Y. Sept. 27, 2012) (Oetken, J.).

### B.     Res Judicata

"The term *res judicata,* which means essentially that the matter in controversy has

already been adjudicated, encompasses two significantly different doctrines: claim preclusion

and issue preclusion."[4]  *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.,* 779 F.3d

102, 107 (2d Cir. 2015) (footnote omitted).  Under claim preclusion, "a final judgment forecloses

'successive litigation of the very same claim, whether or not relitigation of the claim raises the

same issues as the earlier suit.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New*

*Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  Issue preclusion, on the other hand, "bars

'successive litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment,' even if the issue recurs in the context of a

different claim."  *Id.* (quoting *New Hampshire*, 532 U.S. at 748-49).  Because Fresh Del Monte

has expressly disavowed arguments based on the doctrine of issue preclusion, the Court need

only consider how claim preclusion bears on this matter.[5]  (*See* Dkt. No. 91 ("Reply") at 2-3, 8.)

---

[4] For judgments in federal-question cases, the "uniform federal rules of *res judicata*" apply.
*Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation, alteration, and internal quotation marks
omitted).  "For judgments in diversity cases, federal law incorporates the rules of preclusion
applied by the State in which the rendering court sits."  *Id.* at 891 n.4 (citing *Semtek Int'l Inc. v.
Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).  This Court would, therefore, apply federal
rules of preclusion to judgments on claims premised on federal question jurisdiction, and New
York rules of preclusion to judgments on claims premised upon diversity or supplemental
jurisdiction.  However, "[n]either party identifies any way in which federal and state principles
of preclusion law differ in any relevant respect" and the Court has not "found any such
divergence."  *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2376 n.6.  "Because there appears to be no
significant difference between New York preclusion law and federal preclusion law . . . [this
Court] need not base [its] analysis of [the] res judicata claim on only one of these sources of
preclusion law."  *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001); *see Int'l Bus. Mach.
Corp., v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter
. . . unless the laws of the competing jurisdictions are actually in conflict.").

[5] For a determination on an issue of law or fact to be preclusive in a later case, the doctrine of
issue preclusion generally requires, in part, that the determination be "essential to the [prior]
judgment."  Restatement (Second) of Judgments § 27, p. 250 (1980).  The prior determination in
this case was a dismissal with prejudice, granted without reference to the issues—if any—

Claim preclusion requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Technomarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (second alternation in original) (citing *Monohan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). There is no doubt that the first two elements are present here. Moreover, Del Monte Foods concedes that claim preclusion "bars the claims that it could have brought as of September 2010" which is the "date of the prior effective complaint" in *Del Monte II*. (Dkt. No. 85 at 4 n.3.) To the extent that Del Monte Foods purports to assert counterclaims for conduct prior to September 10, 2010, Fresh Del Monte's motion to dismiss is granted.[6]  The question remains whether, as Fresh Del Monte argues, claim preclusion also bars counterclaims related to subsequent sales of Medley and Combination products.

As the Second Circuit's recent decisions in *Technomarine* and *Marcel* clarify, the doctrine of claim preclusion does not bar Del Monte Foods' counterclaims for conduct that occurred after the filing of the effective complaint in *Del Monte II*. In *Technomarine*, the plaintiff had previously sued the defendant, alleging that the defendant was violating the plaintiff's trademarks. 758 F.3d at 502-3. This prior suit resulted in a settlement, which the

---

thereby determined. (*See* Dkt. No. 71-13.) Indeed, the court in *Del Monte II* expressly avoided the question of what claims would be precluded by such a dismissal. (Dkt. No. 71-12 at 15.)

[6] The conduct that occurred prior to September 10, 2010, includes Fresh Del Monte's alleged failure to provide notice of new products "[p]rior to or contemporaneously with [the] first commercial sale . . . ." (License ¶ 4.1.) Because a claim for breach of contract predicated on the failure to provide notice under paragraph 4.1 of the License would have accrued by September 10, 2010, and were the subject of *Del Monte II*, these counterclaims are claim-precluded. Del Monte Foods may continue to pursue counterclaims for failure to provide notice under the License on products that were launched after September 10, 2010. Del Monte Foods may also continue to pursue its counterclaims under paragraph 4.2 of License as they relate to requests for "representative samples of the LICENSED GOODS" that occurred after September 10, 2010.

court deemed an adjudication on the merits.  *Id.* at 499 n.4.  Subsequently, the plaintiff brought a

new suit for trademark infringement, unfair competition, and related claims predicated on

"additional instances of the same type of conduct alleged" in the first suit.  *Id.* at 498.  The

district court dismissed the new complaint on the ground that it was claim-precluded by the first

suit.  The Second Circuit reversed, holding that claim preclusion "does not bar a claim arising

subsequent to a prior action 'even if the new claim is premised on facts representing a

continuance of the same course of conduct.'"  *Marcel*, 779 F.3d at 108 (quoting *Technomarine*,

758 F.3d at 499).  A contrary result, the court noted, would "immunize the defendant against all

suits concerning infringements of the same trademark in a similar way"—effectively converting

claim preclusion from a shield against duplicative litigation into a perpetual license to infringe.

*Technomarine*, 758 F.3d at 503.  In *Marcel*, the Second Circuit reaffirmed the holding of

*Technomarine*, concluding under similar circumstances that "a suit claiming damages for prior

infringements does not bar a subsequent suit for damages for subsequent infringements."  779

F.3d at 109.  While these cases concern the interaction between claim preclusion and trademark

infringement, the same reasoning holds true for Del Monte Foods' related counterclaims for

breach of contract.  *See Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir 1990)

("[W]hen [] parties have entered into a contract to be performed over a period of time and one

party has sued for a breach, res judicata will preclude the party's subsequent suit for any claim of

breach that had occurred prior to the first suit; it will not, however, bar a subsequent suit for any

breach that had not occurred when the first suit was brought.")

     Fresh Del Monte contends that *Technomarine* and *Marcel* do not compel the same result

in this case.  For one, it argues that these cases are distinguishable because they involved

defendants who, faced "with a prior adverse result, sought to exploit claim preclusion to

immunize [their] future conduct" whereas in this case it is "Fresh Del Monte that had its position

vindicated by the judgment on the merits." (Reply at 5.) This is beside the point. It is *issue*

*preclusion*, not claim preclusion, which permits "an issue of fact or law [] actually litigated and

determined by a valid and final judgment, and . . . essential to the judgment" to be "conclusive in

a subsequent action between the parties, whether on the same or a different claim." Restatement

(Second) of Judgments § 27, p. 250 (1980) (emphasis added). In contrast, claim preclusion bars

only "claims asserted in the subsequent action [that] were, or could have been raised, in the prior

action." *Technomarine*, 758 F.3d at 499. Because *Technomarine* and *Marcel* confirm that

subsequent acts of infringement constitute new claims that could not have been litigated in a

prior case, even if the subsequent acts are (but for timing) the same as those at issue in the prior

case, adopting Fresh Del Monte's rule would in effect convert claim preclusion into issue

preclusion. In other words, holding in Fresh Del Monte's favor would confer upon it permanent

protection for its allegedly infringing conduct, despite the lack of a judicial determination that

such conduct falls within the bounds of the License. Had the parties actually litigated these

issues and a court determined them in Fresh Del Monte's favor, it would have a colorable case

for issue preclusion barring further suit. But without meeting the requirements for issue

preclusion, Fresh Del Monte cannot avail itself of that doctrine's benefits.

   Fresh Del Monte also argues that Del Monte Foods' decision to seek a declaratory

judgment as to its rights under the License in *Del Monte II* should have separate preclusive

effect. (Reply at 7, 7 n.5.) On this view, because *Del Monte II* contained a claim for declaratory

judgment that "Fresh Del Monte has violated the terms of the [License] through the sale of its

'medley' products," claim preclusion bars revival of a duplicative declaratory judgment claim in

this action. (*See* Dkt. Nos. 71-5 ¶¶ 44-46, 66 ¶ 114.)

   "[T]he preclusive effect of a declaratory judgment action applies only to the 'matters

declared' and to 'any issues actually litigated . . . and determined in the action." *Duane Reade,*

*Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) (quoting Restatement

(Second) of Judgments § 33).  Thus, had the court in *Del Monte II* issued a declaratory judgment

on the subject matter of the Medley products, that determination would control and preclude

relitigation in this action.  But "[a]s clear as the issue-preclusion effects of a declaratory

judgment may be, the claim preclusion effects are shrouded in miserable obscurity."  18A Wright

& Miller, *Federal Practice and Procedure* § 4446 (2d ed.); *see Duane*, 600 F.2d at 196.

 Determining whether a duplicative claim for declaratory judgment in this case should be

deemed claim-precluded by the dismissal in *Del Monte II* is genuinely difficult.  However, the

Court is not persuaded that dismissal is appropriate at this stage.  For one, it is not clear from the

pleadings that the declaratory relief requested in *Del Monte II* is indistinguishable from the

declaratory relief sought in this action.  In *Del Monte II*, Del Monte Foods requested a

determination that "Fresh Del Monte has violated the terms of the [License] through the sale of

its 'medley' products."  (Dkt. Nos. 71-5 ¶¶ 44-46.)  Here, Del Monte Foods seeks a declaration

that Fresh Del Monte "does not have the right to use the Mark on any products that contain any

ingredient not expressly authorized by the License."  (Countercl. ¶ 114(l).)  These claims for

declaratory judgment are not, on their face, the same.  Although a ruling in Del Monte Foods'

favor on either claim could result in the same practical effect—a Medley product could be

deemed outside the License under either declaration—the two claims might require wholly

different legal theories and be supportable only on the basis of discrete legal conclusions.  And

because the claims are not identical, even if the Court were inclined to strike the duplicative

portion of the new claim for declaratory judgment, it is not clear how to carve out from the new

claim *only* the duplicative part.  *See Duane*, 600 F.3d at 200 n.12 ("[T]o permit *res judicata* to be

applied in [an action for declaratory relief] beyond *the precise issue before the court* would

subvert the very interests in judicial economy that the doctrine was designed to serve.") (quoting

11

*Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 373 (2d Cir. 1992)).  Such an endeavor would require the Court to venture far deeper into this underlying dispute than is appropriate at the pleading stage.

Second, a conclusion that claim preclusion applies here would transform Del Monte Foods' request for a declaratory judgement in *Del Monte II* into a perpetual immunity from adverse declaratory relief for Fresh Del Monte akin to issue preclusion.  As explained above, Fresh Del Monte should not be able, without establishing the elements of issue preclusion, to receive its benefits.  Moreover, every litigator knows that, for reasons both strategic and routine, prayers for relief often ask for every conceivable form of relief.  To invert a prayer for declaratory relief into an equally broad, permanent denial of declaratory relief would in many circumstances result in needless forfeiture.

Third, a ruling in Del Monte Foods' favor does not mean that every declaratory judgment claim, if dismissed before a judicial determination, can be revived in an identical action.  As Judge Friendly once observed, to "immunize this class of cases altogether from the operation of res judicata would permit plaintiffs to bring any number of harassing suits, each of which could be dropped prior to judgment."  *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1276 (2d Cir. 1974).  But courts may prevent abuse of the declaratory judgment procedure without categorically prohibiting successive requests for declaratory relief.  Courts have "unique and substantial discretion" in deciding whether to afford a litigant the possibility of obtaining declaratory relief.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.") (citation and internal quotation marks omitted).  Moreover, *res judicata* can bar vexatious and duplicative suits for declaratory judgment without the need for reflexive application in every case where successive

requests for declaratory relief overlap.  *See U.S. v. E. River Housing Corp.*, 90 F. Supp. 3d 118, 141 (S.D.N.Y. 2015) ("Both *res judicata* and collateral estoppel are flexible doctrine[s], not to be mechanically applied merely because some of the formal prerequisites for application are present.") (citation and quotation marks omitted); *La Societe*, 495 F.2d at 1276 ("Since the doctrine is intended to serve the aims of fairness and efficient judicial administration, it need not be applied mechanically where those ends would not be served.").

In denying Fresh Del Monte's motion, the Court is mindful that this declaratory judgment claim is unlikely to be of great consequence going forward, as Del Monte Foods has also requested both damages and injunctive relief covering the same subject matter.  (*See* Dkt. No. 66 at 43.)  Moreover, if this case is fully litigated and concludes in a valid and final judgment, issue preclusion would serve much the same role as a declaratory judgment, as both would prevent relitigation of the issues thereby determined.[7]

In sum, to the extent that Del Monte Foods has asserted counterclaims for conduct prior to September 10, 2010, Fresh Del Monte's motion to dismiss is granted.  Fresh Del Monte's motion to dismiss is denied as to counterclaims concerning subsequent conduct, as well as the counterclaim for declaratory judgment.

### C.   Combination Products

Claim preclusion aside, Fresh Del Monte separately contends that all counterclaims based on Combination products should be dismissed, including those related to conduct after September 10, 2010, because these claims are "not plausible" given the terms of the License and the decision in *Del Monte I*.

---

[7] For much the same reasons, the Court rejects Fresh Del Monte's broader argument that the request for declaratory judgment in *Del Monte II* should result in claim preclusion of the entire subject matter of *Del Monte II*.  (Reply at 7 n.5.)

The Combination products, which Del Monte Foods contends violate the License agreement, are those that "combine[] refrigerated fruit (fresh or non-fresh) with any vegetables or produce." (Countercl. ¶ 95.)  Del Monte Foods concedes that Fresh Del Monte may "use the Mark on any combination of refrigerated fresh vegetables, refrigerated fresh produce, cut non-refrigerated fresh fruit, cut fresh vegetables (whether or not refrigerated) and cut fresh produce (whether or not refrigerated)." (*Id.*)  But because "refrigerated fruit products" are "[o]mitted from this list," the Combination products violate the License. (*Id.* ¶ 15.)  This is true, in Del Monte Foods' view, even though the License otherwise states that Fresh Del Monte may use the Mark in connection with "fresh fruit, fresh vegetables, and fresh produce . . . ." (License at 45.)

In *Del Monte I*, which Del Monte Foods expressly relies on in its Counterclaims, Judge Rakoff determined that Fresh Del Monte had the right to use the Mark in connection with the cut, refrigerated fresh fruit products at issue. (Dkt. No. 71-4 at 15.)  Although the court noted that the License is "'riddled' with ambiguity," it concluded that the License's terms reflect a "fundamental division . . . between fresh and other things." (*Id.* at 14-15.)  Where, as here, the parties failed to define with specificity the scope of the license, resort must be made to that basic division between fresh and non-fresh food. (*Id.* at 14-15.)  Further, Judge Rakoff determined that refrigeration alone does not deprive a fresh fruit of its status as being fresh. (*Id.*)

Fresh Del Monte has expressly waived the argument that issue preclusion, stemming from *Del Monte I*, forecloses these Combination product claims. (*See* Dkt. No. 91 ("Reply") at 2-3, 8.)  However, issue preclusion aside, the Court agrees with Judge Rakoff's view of how the License terms should be construed.  The Combination product counterclaims, insofar as they target products combining fresh fruit and either fresh vegetables or fresh produce, are dismissed as implausible because the License by its terms authorizes Fresh Del Monte to use the Mark in

connection with fresh products.  *See Twombly*, 550 U.S. at 570.  However, any Combination

product counterclaims targeted at products which combine *nonfresh* fruit with vegetables or

produce may proceed.

### D.    Contract Termination

In its counterclaim for breach of contract, Del Monte Foods states that "[i]n light of

[Fresh Del Monte's] repeated and material breaches of the License, termination of the License is

warranted."  (Countercl. ¶ 122.)   Fresh Del Monte moves to dismiss this claim for termination

on the ground that Article V of the License expressly provides that the only basis for complete

termination of the License is Fresh Del Monte's total abandonment of use of the Marks.  (*See*

License ¶¶ 5.1, 5.2.)  Because the Court concludes that Article V provides for abandonment as

the exclusive ground for termination of the License and Del Monte Foods has not alleged

abandonment, Fresh Del Monte's motion to dismiss this counterclaim is granted.

Generally, New York law provides that "[w]hen one party materially breaches an

agreement, the nonbreaching party may terminate that agreement and sue for total breach."

*Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 498 (S.D.N.Y. 2007); *see, e.g.*, *Cary Oil*

*Co. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401, 408 (S.D.N.Y. 2000).  However, "where the

parties to a contract have agreed to a written termination clause, it must be enforced as written."

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996).

Article V of the License states that the agreement, "unless sooner terminated under the

provisions set forth in this Article V, is perpetual."  (License ¶ 5.1.)  Article V further provides

that Del Monte Foods "may terminate this Agreement in its entirely in the event that [Fresh Del

Monte] abandons its use of" the Mark "by ceasing bona fide commercial use thereof throughout

the entire LICENSED TERRITORY for a period of two consecutive years."  (*Id*. ¶ 5.2.)  The

License does not otherwise provide a basis for total termination of the agreement.

Del Monte Foods argues that it retains the ordinary remedy of contract termination, which would allow for termination upon material breach, despite the clear provisions of Article V. It does not. Article V expressly states that the License is perpetual unless terminated under its provisions, and it provides that only abandonment may serve as a basis for termination of the entire contract. In support of its argument that the License preserved the parties' common law right to termination, Del Monte Foods cites paragraph 10.6 of the License, which provides that the parties shall "make whole and indemnify each other party for any loss . . . caused by a breach by the indemnifying party . . . in addition to any other remedy to which they may be entitled at law or in equity . . . ." But the general terms of this indemnification provision cannot dislodge the specific and exclusive termination provisions of Article V.

Because Del Monte Foods has not alleged abandonment and the Court holds that abandonment is the exclusive ground for termination under the License, Fresh Del Monte's motion to dismiss the counterclaim for termination is granted.

## III.   Conclusion

For the foregoing reasons, Fresh Del Monte's motion to dismiss Del Monte Foods' counterclaims is GRANTED IN PART and DENIED IN PART. To the extent that Del Monte Foods has asserted counterclaims for conduct prior to September 10, 2010, Fresh Del Monte's motion to dismiss is GRANTED. Fresh Del Monte's motion to dismiss is DENIED as to counterclaims concerning subsequent conduct, as well as the counterclaim for declaratory judgment. The motion to dismiss is GRANTED as to Combination products that combine fresh fruit and either fresh vegetables or fresh produce, but the motion is DENIED as to products that combine *nonfresh* fruit with vegetables or produce. Finally, Fresh Del Monte's motion to dismiss the counterclaim for termination of the License is GRANTED.

16

The Clerk of Court is directed to close the motion at docket number 69.

SO ORDERED.

Dated: January 20, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge